IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| NELDA K. CLINKENBEARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-5097-CV-SW-NKL |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Nelda Clinkenbeard's ("Clinkenbeard") Motion for Summary Judgment [Doc. # 11]. Clinkenbeard seeks judicial review of the Commissioner's denial of her request for disability benefits that he submitted in two applications. The first application was filed under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* The second application was filed under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Following a review of the entire record, the Court affirms the ALJ's decision.

**I.    Background**

In her application, Clinkenbeard alleged an onset date of August 1, 2002. She

1

stated that her disabling impairments included anxiety, panic disorder, bipolar disorder, shortness of breath, alcoholism, heart palpitations, and post traumatic stress disorder. (Tr. 118-27.) Clinkenbeard filed her application for benefits on March 13, 2003.

    A.    **Clinkenbeard's Treatment History**

On July 5, 2002, Clinkenbeard was admitted to Cox Medical Center for medical clearance to enter a detoxification program. Clinkenbeard admitted that she was drinking one pint of vodka per day and that she had been fired from her job after getting drunk. (Tr. 158-67.)

During a addiction severity evaluation on July 31, 2002, Clinkenbeard was not obviously depressed, withdrawn, nervous, or anxious. (Tr. 173.) Clinkenbeard stated that she believed she needed psychiatric treatment, but the evaluator believed that Clinkenbeard's need for psychiatric treatment was "significantly lower."

Clinkenbeard's records from September 2002 reflected that she was feeling "okay" and that she did not wish to seek any mental health treatment beyond her treatment for alcoholism. (Tr. 343.)

Dr. Eva C. Wilson evaluated Clinkenbeard on February 3, 2003. Dr. Wilson noted that Clinkenbeard was a longstanding alcoholic and that treatment regimens had been unsuccessful. (Tr. 195-97.) Clinkenbeard was not taking any medication for depression. Dr. Wilson stated that Clinkenbeard was oriented in three spheres, and her general level of information was "high average." Dr. Wilson believed that Clinkenbeard was functioning in the above average range of intellectual functioning and her social judgment

2

Case 3:05-cv-05097-NKL   Document 17   Filed 05/15/06   Page 2 of 12

and comprehension were above average. Dr. Wilson diagnosed Clinkenbeard with major depression, chronic and severe, for which she needed antidepressant medication. She also encouraged Clinkenbeard to seek out daily alcohol dependence treatment.

From March 5, 2003 to March 11, 2003, Clinkenbeard was treated for alcohol withdrawal. (Tr. 199-209, 502-03.) After expressing suicidal thoughts, she was transferred to the psychiatric unit. Clinkenbeard's drug screening tested positive for marijuana and she told the evaluator that the longest she had ever been sober was seven months. Clinkenbeard was oriented to time, place, and person, she was alert, and she had good eye contact.

Dr. Floyd Simpson evaluated Clinkenbeard on June 26, 2003. (Tr. 229-30.) Dr. Simpson stated that Clinkenbeard's alcohol dependence was in early full remission and he diagnosed her with bipolar disorder. On July 28, 2003, Clinkenbeard reported that she had resumed drinking alcohol. (Tr. 228, 274, 288.) She again reported drinking heavily on August 25, 2003. (Tr. 227, 273, 287.) On October 22, 2003, Clinkenbeard stated that she did not like being sober and she reported that she did not take her medication when she was drinking. (Tr. 225, 271, 285.) During her next session, on November 19, 2003, Clinkenbeard stated that she had been drunk one time for a period of five days since her last visit in late October. Dr. Simpson stated that his treatment notes were not intended to be used to determine Clinkenbeard's qualification for disability benefits; instead, he stated that Clinkenbeard's "records are intended to reflect the progress of the course of treatment for a very serious and most likely life long illness." (Tr. 223.) In the notes

3

from Dr. Simpson's follow-up visit with Clinkenbeard on January 17, 2004, Clinkenbeard admitted that she drank heavily during December 2003.

In February 2004, Clinkenbeard was treated at St. John's Regional Health Center. The records reflect that she overdosed on prescription medication. (Tr. 300.) The notes stated that Clinkenbeard had been "in relatively good health in the past" but that she was a "heavy drinker" who drank as much vodka as she could obtain. (Tr. 300.) On February 10, 2004, Dr. Philip Mothershead, an employee at St. John's, questioned whether Clinkenbeard's diagnosis for bipolar disorder was accurate. (Tr. 265.) He stated that she "clearly had depression but it is not clear whether this is secondary to alcoholism." (Tr. 265.)

On April 1, 2004, Drs. William Rosen and Alok Jain examined Clinkenbeard during her treatment for alcohol detoxification. (Tr. 432-34.) Clinkenbeard was still drinking vodka daily during this time. (Tr. 438.) Clinkenbeard was oriented in all spheres and her affect was bright and pleasant, although her mood was depressed. (Tr. 439.) Clinkenbeard was independent with all activities of her daily living. (Tr. 439.)

Dr. Jain evaluated Clinkenbeard's mental status. She denied psychotic symptoms. (Tr. 466.) Clinkenbeard's speech rate and volume were normal, her flow of thought was logical, and she denied any manic and hypomanic symptoms. Clinkenbeard's insight and judgment were poor, although her intelligence was estimated to be average and her memory was intact. (Tr. 466.)

On April 6, 2004, Dr. Jose Raphel evaluated Clinkenbeard. (Tr. 434-35.)

Clinkenbeard reported that she drank one-half pint of vodka everyday. She denied psychotic symptoms or manic episodes. She was prescribed psychotropic medications and she responded well to her treatment. She was not considered a threat to herself or others and her global assessment of functioning ("GAF") was estimated to be 64, which corresponds to only mild symptoms. (Tr. 436.)

Clinkenbeard was treated at the Crane Medical Center on June 24, 2004, for a follow-up visit. (Tr. 337.) According to the treatment notes, Clinkenbeard was feeling "really good" and "happy." (Tr. 337.) Regarding her depression, Clinkenbeard was "feeling better lately" and her prescription was renewed.

### B. Clinkenbeard's Medical Source Statements

#### 1. Dr. Simpson

On June 24, 2004, Dr. Simpson submitted a Medical Source Statement ("MSS"). (Tr. 277-80.) The MSS applied only to the period of time covering June 6, 2003 through January 17, 2004. The MSS instructed Dr. Simpson that the form "is to be completed showing limitations which would remain if the individual stopped using drugs and/or alcohol." (Tr. 277.)

Regarding Clinkenbeard's activities of daily living, Dr. Simpson stated that Clinkenbeard was markedly limited in: coping with normal work stress and maintaining reliability. Regarding her social functioning, Dr. Simpson stated that she was markedly limited in accepting instruction and responding to criticism. Regarding her concentration, persistence, and pace, Dr. Simpson stated that she was markedly limited in: completing a

5

normal workday and workweek without interruptions from symptoms; maintaining attention and concentration for extended periods; performing at a consistent pace; responding to changes in work setting; and working in coordination with others. (Tr. 277-78.)

Dr. Simpson stated that Clinkenbeard suffered moderate impairments in almost every other category listed on the MSS. (Tr. 277-80.)

Dr. Simpson further stated that Clinkenbeard had suffered "substantial loss" in her ability to respond appropriately to supervision, co-workers and usual work situations as well as her ability to deal with changes in a routine work setting. (Tr. 279.) He did not believe that she had suffered substantial loss in her ability to understand simple instructions or her ability to make simple work-related decisions. (Tr. 279.)

Dr. Simpson listed bipolar disorder and alcohol dependence as Clinkenbeard's ailments. He assessed her most recent GAF at 60, which is consistent with mild impairments. Dr. Simpson again certified that "this statement sets forth the limitations and abilities remaining if [Clinkenbeard] has stopped using drugs and/or alcohol." (Tr. 280.)

### 2. *Dr. Wilson*

On October 5, 2004, Dr. Wilson filled out an MSS. (Tr. 659-62.) Dr. Wilson stated that she examined Clinkenbeard only once in February 2003. (Tr. 662.) The MSS stated: "This form is to be completed showing limitations which would remain if the individual stopped using drugs and/or alcohol." (Tr. 659.)

6

Regarding Clinkenbeard's understanding and memory, Dr. Wilson stated that she was not significantly impaired in her ability to remember locations and work procedures or her ability to understand and remember very short and simple instructions. (Tr. 659.) Dr. Wilson did state that Clinkenbeard was markedly limited in her ability to understand and remember detailed instructions.

Regarding Clinkenbeard's sustained concentration and persistence, Dr. Wilson stated that she was not significantly impaired in her ability to carry out short and simple instructions, her ability to work in coordination with or proximity to others, and her ability to make simple work-related decisions. (Tr. 660.) Dr. Wilson stated that Clinkenbeard was moderately limited in her ability to perform activities within a schedule and sustain an ordinary routine without special supervision. Dr. Wilson stated that Clinkenbeard was markedly limited in her ability to carry out detailed instructions, her ability to maintain attention and concentration for extended periods of time, and her ability to complete a normal workday or workweek without interruptions from her psychological impairments.

Dr. Wilson stated that Clinkenbeard was not markedly limited in any category of her social interactions. According to the MSS, Clinkenbeard's only marked limitation in the category of adaptation skills was in her ability to set realistic goals and make plans independently of others. (Tr. 661.)

Dr. Wilson stated that Clinkenbeard could perform the following work-related activities: understand and carry out simple instructions; make simple work-related

7

decisions; respond appropriately to supervision; and deal with changes in the work setting. (Tr. 662.)

### C. The Hearing

The ALJ held a hearing on October 19, 2004. Clinkenbeard testified that she drove, went to the grocery store, took her puppy for walks, watched television, rented movies, cooked, and did some housework. (Tr. 35, 43, 55-56.) She testified that she could shop without a list and that she did some laundry, although her daughters often did it for her because she did not have a washer and dryer at her home. (Tr. 56-57, 60.)

Regarding her medical conditions, Clinkenbeard testified that Dr. Simpson had changed her medication and she felt it was working. (Tr. 47.) She stated that she had not consumed alcohol since April 6, 2004, and that her paranoia had improved since she stopped drinking alcohol. (Tr. 45, 49.)

The ALJ posited a hypothetical question to the testifying vocational expert that assumed a person of Clinkenbeard's age and educational background. The individual would have the limitations of bipolar disorder, depression, anxiety, alcohol dependence, osteoporosis, and chronic pulmonary disease. (Tr. 66.) The ALJ asked whether that individual could perform light work involving simple to detailed, but not complex, job instructions with minimal contact with the public. The vocational expert testified that a person with Clinkenbeard's background and the ailments listed above could perform that work. (Tr. 67.)

### D. The ALJ's Opinion

8

The ALJ found that Clinkenbeard was disabled from August 1, 2002 (her onset date) through April 4, 2004. However, the ALJ found that Clinkenbeard did not qualify for benefits during that time because her alcohol abuse "was a factor material to finding [her] disabled." (Tr. 26.) The ALJ found that Clinkenbeard was not disabled after April 4, 2004.

Regarding Dr. Wilson's MSS, the ALJ wrote:

> Dr. Wilson's assessment is unclear as it relates to [Clinkenbeard]'s substance abuse. The doctor does not specify what impact alcohol was having at the time of her assessment. Moreover, Dr. Wilson does not note [Clinkenbeard]'s apparent sobriety since April 2004. Considering these factors, what conclusions can be drawn from Dr. Wilson's assessment are unclear and unpersuasive. For example, if Dr. Wilson is attempting to assert that [Clinkenbeard] has severe mental limitations irrespective of her alcohol dependence, this assertion is undermined by [Clinkenbeard]'s reports in mid 2004 (when sober) that she is feeling well and happy. If, however, she is attempting to include alcohol dependence as a factor in her assessment, she does not make clear which limitations are being caused by alcohol abuse and whether [Clinkenbeard] would have any limitations if alcohol dependence was excluded as an impairment.

(Tr. 22.) Because of the ALJ's confusion about Dr. Wilson's assessment, she afforded it "little weight." (Tr. 22.) Regarding Dr. Simpson's MSS, the ALJ did not explicitly dismiss or minimize its findings. It is unclear what weight, if any, the ALJ gave to Dr. Simpson's MSS.

The ALJ determined that Clinkenbeard did not have a severe impairment. Under the regulations, a non-severe impairment is defined as one which "does not significantly limit your physical or mental ability to do basic work activities" such as remembering simple instructions, responding appropriately to supervision, and dealing with changes in

a routine work setting. 20 C.F.R. § 404.1521.

## II. Discussion

Clinkenbeard's entire argument is premised on the idea that the ALJ wrongfully discounted the findings contained in Drs. Simpson's and Wilson's MSS forms.

### A. Dr. Wilson's MSS

Dr. Wilson did not conclude that Clinkenbeard was disabled. To the contrary, she affirmatively stated that Clinkenbeard could (1) understand, remember and carry out simple instructions; (2) make simple work-related decisions; (3) respond appropriately to supervision, co-workers and usual work situations; and (4) deal with changes in a routine work setting. (Tr. 662.) Moreover, Dr. Wilson stated that Clinkenbeard could perform these work functions on a sustained basis, meaning that she could do them for eight hours a day for five days a week. (Tr. 662.) Dr. Wilson's assessment is consistent with the regulatory definition of a "non-severe impairment" which is the level of impairment that the ALJ found. *See* 20 C.F.R. § 404.1521 (definition of "non-severe impairment").

Dr. Wilson's MSS does not support Clinkenbeard's argument that she is disabled either before or after April 2004.

### B. Dr. Simpson's MSS

The ALJ's decision to give little weight to the MSS submitted by Dr. Simpson is supported by substantial evidence in the record. Dr. Simpson himself limited the scope of his MSS by stating that it was applicable only to the narrow window of time during which he treated Clinkenbeard, which was from June 2003 to January 2004, a period when

10

Clinkenbeard was disabled as a result of her alcoholism.

Assuming that Dr. Simpson removed Clinkenbeard's alcoholism from the disability equation, as he was required to do by the MSS, then his only diagnosis that may support a finding of disability was his opinion that Clinkenbeard suffered from bipolar disorder. However, Dr. Simpson's notes contain very little discussion of his diagnosis of bipolar disorder nor do they contain any objective evidence to support his diagnosis. There is no discussion about how Dr. Simpson formulated the diagnosis, nor is there any discussion about how Clinkenbeard's bipolar disorder was impacting her daily life.

Instead, the notes focus almost exclusively on Clinkenbeard's struggle with alcoholism. On July 28, 2003, Clinkenbeard reported that she had resumed drinking alcohol. (Tr. 228, 274, 288.) She again reported drinking heavily on August 25, 2003. (Tr. 227, 273, 287.) On October 22, 2003, Clinkenbeard stated that she did not like being sober and she reported that she did not take her medication when she was drinking. (Tr. 225, 271, 285.) During her next session on November 19, 2003, Clinkenbeard stated that she had been drunk one time for a period of five days since her last visit in late October. In the notes from Dr. Simpson's follow-up visit with Clinkenbeard on January 17, 2004, Clinkenbeard admitted that she drank heavily during December 2003.

The notes focus on Clinkenbeard's alcohol abuse and not her bipolar disorder. Thus, to the extent that Dr. Simpson's MSS is interpreted to mean that Clinkenbeard was disabled because of bipolar disorder, that conclusion is not supported by the objective evidence contained in Dr. Simpson's treatment notes.

11

Clinkenbeard bears the burden of proving that her alcoholism was not a material factor in the disability determination for August 2002 through April 2004. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citation omitted). The ALJ's determination that Clinkenbeard failed to satisfy that burden is supported by substantial evidence in the record. Clinkenbeard's medical records are replete with references to her battle against alcoholism, but they contain few references to her other ailments. Based on the record before the Court, it cannot conclude that the ALJ's decision is not supported by substantial evidence.

**III.     Conclusion**

An examination of the ALJ's decision reveals that it is supported by substantial evidence on the record as a whole. Accordingly, it is hereby

ORDERED that Clinkenbeard's Motion for Summary Judgment [Doc. # 11] is DENIED. The decision of the Commissioner is affirmed.

<pre>                                        s/ Nanette K. Laughrey
                                        NANETTE K. LAUGHREY
                                        United States District Judge</pre>

DATE:  May 15, 2006
Kansas City, Missouri